IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| Plaintiff, : | |
| : | |
| v. : | |
| : | Civil No. 7:18CV464 |
| $28,000.00 in U.S. Currency : | |
| Defendant. : | |

**VERIFIED COMPLAINT FOR FORFEITURE *IN REM*** 

Now comes the plaintiff, United States of America, by and through its attorney, Krista Consiglio, Assistant United States Attorney, and brings this Complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

NATURE OF THE ACTION

1. This is a civil action *in rem* brought to forfeit and condemn $28,000.00 in U.S. Currency to the use and benefit of the United States, pursuant to 21 U.S.C. § 881(a) and 18 U.S.C. § 981, for violations of 21 U.S.C. § 841 and 18 U.S.C. § 1960.

THE DEFENDANTS *IN REM*

2. The defendant property consists of the following property:

(a) Approximately $28,000.00 in U.S. currency that was seized from Nashwan Said on March 27, 2018, at mile marker 140 on Interstate 81 in Roanoke, Virginia, and presently in the custody of Customs and Border Protection in the Treasury Suspense Account.

JURISDICTION AND VENUE

3. This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345 and over an action for forfeiture under 28 U.S.C. § 1355(a).

1

4. This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).

5. Venue is proper in this district pursuant to 28 U.S.C. § 1395 because the property is located in this district.

6. Upon the filing of this Complaint, the plaintiff requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule of Civil Procedure G(3)(b)(i), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

## BASIS FOR FORFEITURE

7. The defendant property is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) because it constitutes (1) money, negotiable instruments, securities, and other things of value furnished and intended to be furnished in exchange for a controlled substance in violation of the Controlled Substances Act; (2) proceeds traceable to such an exchange; or (3) money, negotiable instruments, and securities used and intended to be used to facilitate a violation of the Controlled Substances Act. Additionally, the defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a transaction or an attempted transaction in violation of 18 U.S.C. §§ 1956, 1957, and 1960, or is property traceable to such property.

## FACTS

8. The facts supporting this Complaint are stated in the attached Declaration of Special Agent Christopher Cummings, Homeland Security, and are incorporated by reference herein.

WHEREFORE, the United States of America respectfully requests that the Clerk of Court issue a Warrant of Arrest *in rem* pursuant to Supplemental Rule of Civil Procedure G(3)(b); that due notice be given to all parties to appear and show cause why the forfeiture should not be

decreed; that judgment be entered declaring the defendant property to be condemned and forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.


Date: September 17, 2018        Respectfully submitted,

                                        THOMAS T. CULLEN
                                        United States Attorney


                                        */s/ Krista Consiglio*
                                        Krista Consiglio
                                        VA State Bar No. 89088
                                        Assistant United States Attorney
                                        Post Office Box 1709
                                        Roanoke, VA 24008
                                        Tel: 540-857-2250
                                        Fax: 540-857-2614
                                        Email: krista.consiglio@usdoj.gov

## VERIFICATION

I am a Special Agent of Homeland Security, and one of the agents assigned the responsibility for the above-captioned matter. I have read the contents of the foregoing Complaint for Forfeiture, and the statements contained therein are true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 17th day of September, 2018.

_____
Christopher Cummings
Special Agent, Homeland Security

AFFIDAVIT

1.      I am employed as a Special Agent with the Department of Homeland Security (DHS), Homeland Security Investigations (HSI).  I have been employed as a Special Agent since 2003 and have conducted criminal investigations of complex drug smuggling conspiracies involving the illegal importation, distribution and possession with intent to distribute illegal narcotics, as well as financial fraud and money laundering.  I am currently assigned to Roanoke, Virginia.  In this position, I am responsible for investigating various crimes, including the illegal importation and distribution of narcotics, customs violations including import/export fraud, immigration violations and other violations of the United States Code.  Prior to becoming a Special Agent with HSI, your affiant was employed as a United States Border Patrol Agent for approximately three years.  I am an "investigative or law enforcement officer" as defined in Title 18 of the United States Code, § 2510(7), which grants the authority for such officers to conduct investigations and make arrests for offenses enumerated in the United States Code.  HSI has a jurisdictional interest and authority to investigate acts and conspiracies that amount to violations of Title 18 and Title 21 of the United States Code, pertaining to the unlawful smuggling of merchandise into the domestic United States, which includes contraband such as controlled substances and other related articles.

2.      The facts and information contained in this affidavit are based upon my personal knowledge and the investigation and observations of other agents and police officers involved in this investigation.  All observations referenced below that were not personally made by me were related to me by persons who made such observations.

3.      This affidavit contains information necessary to support a complaint relating to $28,000.00 in U.S. currency which (a) was involved in or that facilitated illegal activity and/or (b) represents the proceeds of illegal activity, in violation of 21 USC § 841 and 18 USC § 1960, and is therefore subject to forfeiture under 21 U.S.C. § 881 (a)(6) and 18 USC § 981.

4.      On March 27, 2018, at approximately 10:20 a.m., Virginia State Police (VSP), Lieutenant (Lt.) Becky Crannis-Curl observed a Black 2017 Chevrolet Impala with Massachusetts license plate 9GCW30 pass by her at an approximate speed of 79 miles per hour in a posted 60 miles per hour zone on Interstate (I) 81 at mile marker 140 in Roanoke, Virginia. Lt. Crannis Curl activated her emergency lights and observed that the driver was slow to respond to her signal to stop.  She also noticed that the driver maintained constant visual contact with her as she stayed behind his vehicle and contacted the VSP communications center.  The driver continued this behavior as she exited her vehicle and walked to the driver's side to speak with him.

5.      Lt. Crannis-Curl greeted the driver and asked him for his license and registration.  The driver identified himself as Nashwan SAID and handed her a New York driver's license and a rental contract from National Car Rental.  Lt. Crannis-Curl asked SAID where he was going and if he was aware of the speed limit.  SAID held his cell phone out of the window and showed Lt. Crannis-Curl a highlighted route which indicated he was going to the Shell Station in Christiansburg, Virginia located off the 118c exit of I-81.  Lt. Crannis-Curl asked SAID if that was

1

where he was headed and SAID confirmed that he was to meet his cousin there. Lt. Crannis-Curl then asked where he was coming from and SAID replied that he was coming from New York. He added that he thought the speed limit was 70 or 80 miles per hour. Lt. Crannis-Curl advised SAID of the reason for the stop and then asked him to remain in the vehicle.

6. Lt. Crannis-Curl performed law enforcement records checks pertaining to SAID's driver's license and determined SAID's license had been suspended for failure to pay fines. She also learned that SAID was currently on probation from a federal embezzlement conviction in New York in 2016. Lt. Crannis-Curl then contacted National Car Rental and asked if there was a specific location that they would like the car towed and stored. Lt. Crannis-Curl then requested that a wrecker respond to her location.

7. When the wrecker arrived, Lt. Crannis-Curl asked SAID to exit his car and walk over to the side of the wrecker. She issued SAID a summons for speeding and a summons for operating a motor vehicle without a license. Lt. Crannis-Curl than began to conduct an inventory of SAID's vehicle as is required when a vehicle is going to be towed. *See United States v.* Matthews, 591 F.3d 230, 238 (4th Cir. 2009) (finding the search of a trunk to be within the inventory search exception); *United States v. Lee*, 225 F. App'x 132, 135 (4th Cir. 2007) (finding an inventory search of a trunk prior to towing was within the inventory search exception). She opened the trunk and it was empty. She then raised the carpet to confirm that the spare tire was stored there. There was no tire in place where the wheel well was formed to hold a spare tire. Lt. Crannis-Curl saw only a black plastic grocery bag with two additional black plastic bags inside. She opened the bags and discovered what appeared to be several thousand dollars bundled in various sizes with rubber bands. Lt. Crannis-Curl then closed the bags, shut the trunk and placed SAID under investigative detention in her patrol vehicle. Your affiant knows that large scale narcotics traffickers must maintain on hand large amounts of U.S. currency to maintain and finance their ongoing narcotics business. Narcotics traffickers often use couriers to transport cash proceeds in a concealed fashion to avoid a financial transaction that leaves a record of those proceeds of illegal activity.

8. Lt. Crannis-Curl then contacted VSP Sgt. David Gott and VSP Special Agent (S/A) Frank Figgers to assist with the investigation. Both officers agreed to come assist. S/A Figgers subsequently contacted your affiant.

9. During an unsolicited conversation with Lt. Crannis-Curl in her patrol car, SAID stated that his cousin gave him the cash and asked him to take it to his cousin's friend at the gas station.

10. S/A Frank Figgers arrived at the scene and continued the inventory of the rental vehicle and found a cell phone under the backseat in the "on" position. S/A Figgers asked SAID if the cell phone was his phone. SAID said it was not his cell phone and he did not know whose phone it was. He added that his cousin gave him money in New York to take to his cousin's friend named "Mike" at the Shell station in Christiansburg. S/A Figgers' then advised SAID that he was not under arrest but he was also not free to leave the scene at that time. S/A Figgers read SAID his Miranda rights and asked him if he was willing to talk to agents without an attorney present. SAID answered a few questions and then decided he did not wish to speak to agents.

11. Your affiant then arrived at the scene and was notified by S/A Figgers that SAID had stated he did not wish to answer anymore of S/A Figgers questions. I identified myself to SAID and explained to him that HSI may be seizing the money if SAID could not explain where the money came from and why it was being transported across state lines in a concealed fashion. SAID told

2

me that he did not mind reiterating what he had already told S/A Figgers. SAID stated his cousin asked him to drive an unspecified amount of money down to a friend named Mike in Christiansburg for the purpose of buying a gas station. He did not know Mike's last name. SAID stated he had never transported money before, but confirmed he was to receive payment for transporting the money. SAID did not know how much he was to receive. I asked SAID for his cousin's name and SAID stated it was difficult to say, but stated that the car was rented in his cousin's name. SAID also stated he did not know where the cell phone came from that the VSP found under the middle section of the backseat. He also did not know why it was in the "on" position. SAID signed an abandonment form for the cell phone and the VSP seized it. The cell phone was discovered in the "on" position, but the screen was locked when S/A Cummings and the VSP picked up the phone. I know from training and experience that people engaging in drug activity and other criminal activity often have more than one cell phone to maintain anonymity. These are often referred to as "burner phones" and are commonly discarded to avoid being tied to the criminal activity.

12. I then picked up the rental agreement and saw that the car was rented to Moaath ALGABYALI on March 22, 2018 as a one-week rental. SAID confirmed that that was his cousin's name. The car was rented from National Car Rentals at LaGuardia Airport. There was no signature, initials, nor phone number for ALGABYALI on the agreement, but there was Visa Number 5853 listed under the payments section. SAID did not know the address of his cousin nor did he want to give me any other information about his cousin. I confirmed with SAID that he was transporting the money on behalf of his cousin from New York to Virginia for an unspecified amount of money, and SAID agreed. I asked SAID if he would again provide an address so that law enforcement could return the money if able. SAID would not provide any other address but told me that law enforcement could return the money to him at 485 New Lots Avenue, Brooklyn, New York 11207 and he would then give the money back to his cousin. I told SAID that it appeared very suspicious that he would not tell officers where the money came from, and he would not provide officers more information about the owner of the money. I also told him that it was even more suspicious that he was transporting someone else's money concealed in the trunk of a rental car that he was not even legally allowed to drive. SAID did not wish to answer any other questions. I know from my training and experience that people transporting contraband or illicit proceeds often use rental cars to preserve their anonymity when engaged in such activity.

13. At approximately 2:24 p.m., Roanoke City Police Officer K.R. Adams responded to the location with her narcotics K9 Richter, trained and certified to alert to the presence of marijuana, cocaine, heroin, and methamphetamine. One of the VSP officers placed the bag of money between two concrete jersey walls about thirty yards from the vehicle to isolate the money from the trunk of the rental car. Officer Adams allowed her K9 to walk in the direction of the jersey walls. The K9 alerted to the presence of narcotics.

14. VSP officers then counted the stacks of money, which were contained in the black plastic bags. The amount totaled to $28,000 in U.S. currency consisting of ninety-one $100 bills, twenty-seven $50 bills, six-hundred and ninety $20 bills, two-hundred and seventy-eight $10 bills, one-hundred and seventy-four $5 bills, and one-hundred $1 bills. Based on my training and experience, the money was bundled and wrapped with rubber bands in such a way that is consistent with money that is proceeds of controlled substances. Controlled substance proceeds are often concealed in such a way as to avoid reporting requirements and transported physically for the purpose of avoiding traceable transactions used in conventional banking systems.

15.     Your affiant administratively seized the currency for suspected violations of 21 USC § 881 and 18 USC § 1960.

16.     Your affiant and VSP officers transported the currency to a local Wells Fargo branch bank for an accurate count and converted the currency to a cashier's check made payable to U.S. Customs and Border Protection.


18.  Your affiant additionally queried federal and state directories of licensed money transmitters operating in New York and Virginia as required by the Bank Secrecy Act and 31 USC § 5330 which requires a money transmitting business (MSB) to be registered with the state in which its operating and the Secretary of Treasury.  SAID was not registered or licensed to operate as or in a MSB.

19.     Based on the foregoing information, your affiant believes there is probable cause to seize the $28,000 in U.S. currency which is subject to forfeiture under 21 USC § 881 (a) (6) and 18 USC § 981.


I declare under penalty of perjury that the foregoing is true and correct.


Executed this ___17th__ day of September 2018


_____
Christopher Cummings
Special Agent
Homeland Security Investigations

4

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
United States of America

## DEFENDANTS
$28,000.00 in U.S. Currency

**(b)** County of Residence of First Listed Plaintiff
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Krista Consiglio, AUSA
P.O. Box 1709, Roanoke, VA 24008
540-857-2250

Attorneys *(If Known)*
James Kirshner, Esq, Lazzaro Law Firm, P.C.
360 Court Street, Suite 3. Brooklyn NY 11231
718-488-1900

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question *(U.S. Government Not a Party)*
☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS — PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

**TORTS — PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
*Habeas Corpus:*
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty
*Other:*
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☒ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from Another District *(specify)*
☐ 6 Multidistrict Litigation - Transfer
☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
21 U.S.C. § 881(a)(6)
Brief description of cause:
Civil Forfeiture

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*
JUDGE
DOCKET NUMBER

DATE: 09/17/2018
SIGNATURE OF ATTORNEY OF RECORD: /s/ Krista Consiglio

**FOR OFFICE USE ONLY**
RECEIPT # | AMOUNT | APPLYING IFP | JUDGE CONRAD | MAG. JUDGE